**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AVADEL CNS PHARMACEUTICALS, LLC,

     *Plaintiff*,

    v.

XAVIER BECERRA, Secretary of Health and
Human Services,

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

ROBERT M. CALIFF, Commissioner of Food and
Drugs,

U.S. FOOD AND DRUG ADMINISTRATION,

     *Defendants,*

        &amp;

JAZZ PHARMACEUTICALS, INC.,

     *Defendant-Intervenor*.

Case No. 1:22-cv-2159-APM

**REDACTED**

---

**REPLY IN SUPPORT OF DEFENDANT-INTERVENOR'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.      SUBJECT MATTER JURISDICTION IS LACKING ......................................... 3

II.     THE PATENT DECISION IS NOT A FINAL AGENCY ACTION .............................. 6

III.    AVADEL HAS—AND IS PURSUING—ALTERNATIVE REMEDIES. ...................... 8

IV.     AVADEL WAIVED ITS CENTRAL CLAIMS. ................................................... 9

V.      AVADEL'S ARGUMENTS ON THE MERITS FALL SHORT. ................................ 11

        A.      FDA Has Authority To Reject Avadel's Section 505(b)(2) Statement. ............... 11

        B.      FDA Properly Rejected Avadel's Statement. ........................................ 14

        C.      Count II Fails And Does Not Justify The Requested Remedy. .......................... 24

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*aaiPharma Inc. v. Thompson*,
 296 F.3d 227 (4th Cir. 2002) ................................................................12

*Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*,
 750 F.2d 81 (D.C. Cir. 1984) ..................................................................3

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
 370 F. Supp. 3d 1 (D.D.C. 2019) ..........................................................7

*Am. Coll. of Obstetricians & Gynecologists v. FDA*,
 472 F. Supp. 3d 183 (D. Md. 2020) ......................................................22

*Apotex, Inc. v. Thompson*,
 347 F.3d 1335 (Fed. Cir. 2003) ............................................................12

*AstraZeneca LP v. Apotex, Inc.*,
 633 F. 3d 1042 (Fed. Cir. 2010) ...........................................................12

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
 512 F.3d 1338 (Fed. Cir. 2008) ............................................................23

*Bennett v. Spear*,
 520 U.S. 154 (1997) ...........................................................................6, 7

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
 566 U.S. 399 (2012) .............................................................................15

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
 688 F.3d 766 (Fed. Cir. 2012) ..............................................................15

*Carr v. Saul*,
 141 S. Ct. 1352 (2021) ......................................................................9, 10

*City of Salisbury v. FERC*,
 36 F.4th 1164 (D.C. Cir. 2022) .............................................................14

*CREW v. DOJ*,
 846 F.3d 1235 (D.C. Cir. 2017) ..............................................................8

*Cutler v. Hayes*,
 818 F.2d 879 (D.C. Cir. 1987) ................................................................4

*Authorities chiefly relied upon are marked with asterisks.

*Del. Dep't of Nat. Res. & Env't Control v. EPA*,
   895 F.3d 90 (D.C. Cir. 2018) ..................................................................................9

*\*El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*,
   396 F.3d 1265 (D.C. Cir. 2005) ..............................................................................8

*Genus Lifesciences, Inc. v. Azar*,
   No. 20-211, 2021 WL 270409 (D.D.C. Jan. 27, 2021) ..........................................12

*Grecian Magnesite Mining, Indus. & Shipping Co., SA v. IRS*,
   926 F.3d 819 (D.C. Cir. 2019) ..............................................................................14

*Hemp Indus. Ass'n v. DEA*,
   36 F.4th 278 (D.C. Cir. 2022) ................................................................................5

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004) ................................................................................7

*Island Intell. Prop., LLC v. TD Ameritrade, Inc.*,
   No. 21-273, 2022 WL 1608044 (E.D. Tex. May 20, 2022) ....................................23

*Jamison v. FTC*,
   628 F. Supp. 1548 (D.D.C. 1986) ...........................................................................4

*In re Lantus Direct Purchaser Antitrust Litig.*,
   950 F.3d 1 (1st Cir. 2020) ......................................................................................20

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ..............................................................................................11

*Moms Against Mercury v. FDA*,
   483 F.3d 824 (D.C. Cir. 2007) ................................................................................4

*\*Nasdaq Stock Market LLC v. SEC*,
   1 F.4th 34 (D.C. Cir. 2021) ...........................................................................2, 6, 7

*Nat'l Auto. Dealers Ass'n v. FTC*,
   864 F. Supp. 2d 65 (D.D.C. 2012) ........................................................................16

*Nat'l Treasury Emps. Union v. FLRA*,
   745 F.3d 1219 (D.C. Cir. 2014) ..............................................................................6

*\*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) ............................................................................................14

*Niz-Chavez v. Garland*,
   141 S. Ct. 1474 (2021) ..........................................................................................23

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ........................................................................................24

*\*Nostrum Pharms., LLC v. FDA*,
   35 F.4th 820 (D.C. Cir. 2022) ...............................................................1, 3, 6

*In re NRDC*,
   645 F.3d 400 (D.C. Cir. 2011) ............................................................................4

*Pennaco Energy, Inc. v. DOI*,
   377 F.3d 1147 (10th Cir. 2004) .........................................................................7

*Pharm. Mfg. Rsch. Servs., Inc. v. FDA*,
   957 F.3d 254 (D.C. Cir. 2020) ......................................................................3, 4

*Purepac Pharm Co. v. Thompson*,
   238 F. Supp. 2d 191 (D.D.C. 2002) ........................................................5, 6, 15

*Purepac Pharm Co. v. Thompson*,
   354 F.3d 877 (D.C. Cir. 2004) ............................................................................5

*Ranbaxy Lab'ys Ltd. v. FDA*,
   307 F. Supp. 2d 15 (D.D.C. 2004) .....................................................................5

*\*S. Coast Air Quality Mgmt. Dist. v. EPA*,
   472 F.3d 882 (D.C. Cir. 2006) ........................................................................21

*Salt Lake Cmty. Action Program, Inc. v. Shalala*,
   11 F.3d 1084 (D.C. Cir. 1993) ...........................................................................9

*Sims v. Apfel*,
   530 U.S. 103 (2000) ........................................................................................10

*\*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................5

*TorPharm, Inc. v. Shalala*,
   No. 1:97-cv-1925, 1997 WL 33472411 (D.D.C. Sept. 15, 1997), *remanded*
   *upon dismissal of appeal*, 1998 WL 135491 (D.C. Cir. Feb. 5, 1998), *vacated*,
   Order (D.D.C. Apr. 9, 1998) ..............................................................................5

*TorPharm, Inc. v. Thompson*,
   260 F. Supp. 2d 69 (D.D.C. 2003) .....................................................................5

*\*TRAC v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ........................................................................1, 3

*UFCW Local 1776 v. Takeda Pharm. Co.*,
  11 F.4th 118 (2d Cir. 2021) ........................................................................20

*United States v. Laraneta*,
  700 F.3d 983 (7th Cir. 2012) .....................................................................14

*Gallardo ex rel. Vassallo v. Marstiller*,
  142 S. Ct. 1751 (2022) ..............................................................................13

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013). ....................................................21

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ...................................................................................10

**Statutes and Regulations**

18 U.S.C. § 1001 ...............................................................................................11

18 U.S.C. § 2259(c)(2) .....................................................................................14

*21 U.S.C. § 355 ........................................................................................ *passim*

*21 U.S.C. § 355-1 .....................................................................................17, 18

Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub.
  L. No. 108-173, 117 Stat. 2066 .................................................................15

21 C.F.R. § 12.87(d) .........................................................................................10

*21 C.F.R. § 314.50 .................................................................12, 16, 18, 20

21 C.F.R. § 314.53(f)(1) ...................................................................................15

21 C.F.R. § 314.54(a)(1) ...................................................................................20

21 C.F.R. § 314.94 ............................................................................................18

21 C.F.R. § 314.110(a) ........................................................................................7

21 C.F.R. § 314.125(b)(7) .................................................................................11

21 C.F.R. § 314.520 .....................................................................................16, 17

57 Fed. Reg. 58942 (Dec. 11, 1992) .............................................................16, 17

68 Fed. Reg. 36676 (June 18, 2003) ................................................................12

81 Fed. Reg. 69580 (Oct. 6, 2016) ..................................................................18

85 Fed. Reg. 2164 (Jan. 14, 2020) .................................................................................6

## INTRODUCTION

Jazz's initial brief (Dkt. 24-2) described Avadel's arguments as "aggressive and unsound." Jazz Br. 2. Avadel's response (Dkt. 31-2) confirms that assessment from its first line. There, Avadel purports to offer the Court a "dose of reality," Opp. 1, but immediately misstates key facts. Contra Avadel, the Xyrem REMS **is not** limited to preventing "non-patients" from obtaining sodium oxybate **and does** address how the drug "is to be used by" patients. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Because patient care is at the heart of the REMS, Avadel's "dose of reality" is fantasy, and it is far from the only place where Avadel seeks to end-run fact or precedent.

**Jurisdiction:** FDCA section 505(h) grants the courts of appeals exclusive jurisdiction over a final order refusing or withdrawing approval of an NDA. 21 U.S.C. § 355(h); *Nostrum Pharms., LLC v. FDA*, 35 F.4th 820, 827 (D.C. Cir. 2022). Review of interlocutory decisions on that subject, including alleged inaction, is also exclusively committed to the court of appeals. *TRAC v. FCC*, 750 F.2d 70, 78-79 (D.C. Cir. 1984). Avadel never grapples with the fact that its challenge to FDA's review of its NDA concerns just the kind of questions the courts of appeals address under section 505(h), and thus are not subject to district court review.

**Cause of Action:** Avadel pled itself out of this Court by contending (correctly) that the Patent Decision resolved "only one discrete subcomponent" of its NDA. Compl. ¶10. ████████

████████████████████████████████████████████

████████████████████████████████████████████

█████ Avadel grudgingly acknowledges that the ODE question remains open, but claims the Patent Decision is nonetheless "final" because it "was final concerning the limited issue decided." Opp. 13. But under *Nasdaq Stock Market LLC v. SEC*, 1 F.4th 34, 39 (D.C. Cir. 2021), "finality must be measured in relation to the agency's entire process, not just 'one phase of the process.'" Avadel literally has no answer to that binding precedent; it does not even cite *Nasdaq*. Avadel also lacks an APA cause of action because it has other adequate remedies, including the statutory counterclaim to delist the '963 patent that it is pursuing in the District of Delaware.

**Issue Waiver**: Avadel *concedes* that it failed to raise two of its central arguments during agency proceedings, and that it urged FDA to adopt a position that it now attacks. Remarkably, Avadel argues this is no problem because pharmaceutical companies need not take arguments about NDAs to FDA before bringing them to court. The argument is baseless—Avadel's reliance on a case about the latitude *sometimes* granted to Social Security claimants speaks volumes.

**Merits:** Avadel's lead argument is that FDA had no authority to consider, *at all*, the appropriateness of its statement that it was not seeking approval for a patented use. Avadel has no way of squaring that extravagant argument with other aspects of the statute that require FDA to review the entire application and to reject applications that contain untrue statements of fact or are missing required patent information. Avadel also has no answer to our showing that language similar to the "Opinion Clause" is commonplace and is nowhere else interpreted to preclude an agency from reviewing a submission based on the regulated party's opinion or best knowledge. Nor, as we show below, is there any substance to Avadel's arguments that FDA reached an unreasonable conclusion about the accuracy of Avadel's statement on the record before it.

**Remedy:** Even if Avadel had a point about any of its challenges, it would remain wrong about the remedy. The ordinary course when a court finds fault with an agency's decision is to

vacate and remand for further proceedings. Avadel identifies no precedent for the aggressive remedy it instead proposes—which is to treat the Patent Decision as if it never happened, ignore that Avadel chose to certify to the '963 patent (thereby triggering patent litigation and a 30-month stay), ███████████████████████████████████████, ignore that FDA did issue one, pretend that the agency instead sat on its hands and did nothing, and direct FDA to resolve ODE and all other outstanding issues within just two weeks. In these circumstances—yes, including the fact that Avadel's difficulties are the unsurprising result of its own aggressive business strategy—there is no justification for Avadel's extreme proposed remedy.

## ARGUMENT

## I.   SUBJECT MATTER JURISDICTION IS LACKING.

Section 505(h) gives the courts of appeals exclusive jurisdiction to review a final order "refusing or withdrawing approval" of an NDA. 21 U.S.C. § 355(h). This carries two critical corollaries: First, it strips district courts of authority to review final orders rejecting NDAs. *See TRAC*, 750 F.2d at 78–79. Second, it strips district courts of jurisdiction over "any suit seeking relief that might affect the Circuit Court's future jurisdiction," *id.*, and thus bars district courts from reviewing interlocutory claims that lie along the path to a final order. *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 88 (D.C. Cir. 1984).

Those principles preclude Avadel from pursuing its claims in this Court. Avadel seeks a declaration that FDA erred in concluding that Avadel's application is deficient without a certification. *See* Compl., Request for Relief. That is precisely the kind of issue a court of appeals would examine on review of a final order. *See Pharm. Mfg. Rsch. Servs., Inc. v. FDA*, 957 F.3d 254, 256 (D.C. Cir. 2020) (reviewing under section 505(h) a final order rejecting abuse deterrence claims in the proposed labeling for a proposed opioid product); *see also Nostrum*, 35 F.4th at 826-27 (courts lack jurisdiction to review FDA's interlocutory decision that an applicant submitted the

wrong kind of bioequivalence study). Avadel also seeks to enjoin FDA "from requiring Avadel to submit a patent certification to the '963 patent, including as a precondition to NDA approval." *See* Compl., Request for Relief. That request "obviously seeks relief that might affect the future jurisdiction of the court of appeals, since such an injunction would prevent [FDA] from issuing a final order reviewable by the court of appeals." *Jamison v. FTC*, 628 F. Supp. 1548, 1551 (D.D.C. 1986). Nor may Avadel "seek[] to require or accelerate [FDA] action" in this Court on matters reviewable in the court of appeals. *Id.* at 1550-51.

Avadel attempts two principal responses. First, Avadel notes that "the scope of jurisdiction-stripping depends on the breadth of the Court of Appeals' direct-review jurisdiction." Opp. 9. Jazz agrees—"[i]t is [the Court of Appeals'] interest in protecting its future jurisdiction that gives rise to jurisdiction under a *TRAC* theory. The interest does not arise if the final agency action is not reviewable in [that] Court." *Moms Against Mercury v. FDA*, 483 F.3d 824, 827 (D.C. Cir. 2007). That does not help Avadel, because the final order previewed by the Patent Decision—denial of Avadel's NDA—*is* reviewable in the court of appeals. *See, e.g.*, *Pharm. Mfg.*, 957 F.3d at 254.[1]

Avadel's second argument is that judges in this district "routinely hear APA challenges to final FDA orders issued as part of the NDA process that are not orders 'refusing or withdrawing approval of an application.'" Opp. 8 & n.3. With one arguable exception, Avadel's cases do not address interlocutory orders going to the *approvability of an application*, but instead concern

---

[1] Avadel relatedly accuses Jazz of ignoring *Cutler v. Hayes*, 818 F.2d 879 (D.C. Cir. 1987), which it claims is "fatal to Jazz's argument." Opp. 10. Not so. Jazz cited *Cutler* in its prior brief, and *Cutler* does not support Avadel. *Cutler* teaches that section 505(h) does not apply to cases challenging FDA's promulgation of "regulations." 818 F.2d at 887 n.61. Avadel does not challenge a regulation; it challenges a non-final adjudicatory determination. Avadel's reliance, Opp. 10, on *Moms Against Mercury v. FDA*, 483 F.3d at 824, and *In re NRDC*, 645 F.3d 400 (D.C. Cir. 2011), is similarly misplaced. *NRDC* involved review of a citizen petition, 646 F.3d at 405, while *Moms* involved efforts to classify dental fillings as medical devices. 483 F.3d at 825. Neither type of proceeding is the subject of a direct review provision.

issues collateral to approval, such as which generic drug is entitled to 180 days of exclusivity under section 505(j). *See Purepac Pharm Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004) ("*Purepac II*"); *Ranbaxy Lab'ys Ltd. v. FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004); *Purepac Pharm Co. v. Thompson*, 238 F. Supp. 2d 191 (D.D.C. 2002) ("*Purepac I*"); *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69 (D.D.C. 2003). Moreover, none of those decisions addressed section 505(h). "[D]rive-by jurisdictional rulings of this sort . . . have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

The only decision cited by Avadel that addresses section 505(h) is an unpublished decision from 1997, which was later vacated. *See TorPharm, Inc. v. Shalala*, No. 1:97-cv-1925, 1997 WL 33472411, at *2 (D.D.C. Sept. 15, 1997), *remanded upon dismissal of appeal*, 1998 WL 135491 (D.C. Cir. Feb. 5, 1998), *vacated*, Text Order, Dkt. 62 (D.D.C. Apr. 9, 1998). There, the ANDA filer had certified to all relevant patents, and the patent owner had filed suit triggering a 30-month stay. 1997 WL 33472411 at *1. The dispute arose when the patent court granted summary judgment in favor of the ANDA filer and the parties disagreed as to whether that was sufficient to lift the stay—the FDA said "no" because an appeal was pending. *Id.* at *2. In that specific setting, the district court determined that it was appropriate to assert jurisdiction because FDA "ha[d] not *refused* to approve plaintiff's ANDA" within the meaning of section 505(h). *Id.* Here, in contrast,

██████████████████████████████████████████████████████████████

████████████████████████████████[2]

---

[2] Finally, Avadel argues that jurisdiction over Count II is appropriate even if jurisdiction is lacking over Count I. Opp. 11. However, as Avadel concedes, Count II cannot stand without Count I. *See* Opp. 41 (Count II requests relief only "to the extent Avadel is no longer bound to a certification— i.e., FDA's Patent Decision is set aside"). A request for relief masquerading as a cause of action cannot solve Avadel's jurisdictional problem. *See Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 288 (D.C. Cir. 2022) ("[I]n the context of exclusive review statutes, we have cautioned against being lulled to sleep by creative framing.") (cleaned up).

## II.     THE PATENT DECISION IS NOT A FINAL AGENCY ACTION.

The Patent Decision did not "mark the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation omitted). Avadel protests that the decision purports to be "final" and that FDA "assent[ed] to review." Opp. 11-12. But the same was true in *Nasdaq Stock Market LLC v. SEC*, 1 F.4th 34, where the SEC both called its order "final," 85 Fed. Reg. 2164, 2165 (Jan. 14, 2020), and argued it was reviewable, *see Nasdaq*, 1 F.4th at 38. The D.C. Circuit disagreed. Nor does it matter if the Patent Decision was "final concerning the limited issue decided," Opp. 13, since "finality must be measured in relation to the agency's entire process, not just 'one phase of the process,'" *Nasdaq*, 1 F.4th at 39.

Avadel does not have one word to say about how this case survives *Nasdaq*. Ignoring *Nasdaq* completely, Avadel falls back, Opp. 12, on the district court's decision in *Purepac I*, which, unusually, addressed finality in the course of "evaluating a laches challenge." 238 F. Supp. 2d at 203. But that ruling predated *Nasdaq* and is non-binding in any case—although the court of appeals affirmed in *Purepac II*, its decision did not address finality.

Avadel's remaining arguments fare no better.[3] For starters, it is immaterial whether the Patent Decision is "akin to a CRL." Opp. 12. The point is that even a CRL is nonfinal, *see Nostrum*, 35 F.4th at 826, which means that a deficiency letter (which comes before a CRL) also must be nonfinal. Avadel also is wrong to contend that the Patent Decision did not open any doors for it. Opp. 13. The Patent Decision opened at least two doors. Door # 1 would have allowed Avadel to defend its position, request a CRL, and proceed through the channel prescribed by Congress. Avadel just chose Door # 2, which was to accede to FDA's position and obtain a tentative approval. One consequence of that choice is the absence of final action.

---

[3] *National Treasury Employees Union v. FLRA* does not help Avadel as it turned on the rule that attorney's fees are "collateral" to a final judgment. 745 F.3d 1219, 1222-23 (D.C. Cir. 2014).

There also is no merit to Avadel's assertion that it "could not have lawfully drawn a CRL." Opp. 14. That "FDA did *not* issue a CRL," *id.*, is not probative given Avadel's chosen path. Had Avadel pursued Door # 1, the agency would have issued a CRL. FDA's regulations (which Avadel conspicuously ignores) require as much, *see* 21 C.F.R. § 314.110(a) ("FDA will send the applicant a complete response letter if the agency determines that we will not approve the application … in its present form for one or more of the reasons given in § 314.125."), and FDA has done so in the past. *See* Griffin Ex. 32, Dkt. 27-33 (CRL issued when applicant insisted patent certifications were "not necessary").[4] Finally, there are at least two bases to deny an application containing an inappropriate patent statement. *See* Jazz Br. 19-22; *infra* 11-14.

Consummation aside, the Patent Decision is also nonfinal because FDA did not determine any "rights or obligations" or impose any "legal consequences." *Bennett*, 520 U.S. at 178 (citation omitted); *see* Jazz Br. 16–17. To the contrary, FDA "merely express[ed] its view of what the law require[d]," leaving Avadel "just as it found it" with a choice whether to certify to the '963 patent or stand on its refusal to do so. *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427–28 (D.C. Cir. 2004) (citation omitted). *Pennaco Energy, Inc. v. DOI*, 377 F.3d 1147, 1155 (10th Cir. 2004), is not to the contrary. There, the agency stymied a lessee's plans to develop land it acquired from the government. *See id.* Avadel has no comparable vested property right. What Avadel has is a preference for judicial review now, even though its NDA remains pending with issues unresolved. That preference does not create finality.

---

[4] Avadel criticizes Ex. 32 as being extra-record, but courts regularly consider extra-record evidence bearing on finality. *See Nasdaq*, 1 F.4th at 38 ("clearest indication" of nonfinality was an order from outside the record); *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 31 n.11 (D.D.C. 2019) (considering "extra-record evidence" of finality). Both Ex. 32 and Avadel's own extra-record offering, *see* Opp. 14 n.10, show that FDA issues CRLs in analogous circumstances.

## III.   AVADEL HAS—AND IS PURSUING—ALTERNATIVE REMEDIES.

APA review is "precluded" because Avadel has adequate, alternative remedies under other statutes. *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). Avadel retorts, Opp. 14-15, that "review in the Courts of Appeals is not available" today because the Patent Decision is not a final order under that provision. But, as discussed, that is only because Avadel chose not to walk through the door that led to a CRL, a hearing, and ultimately a final order. Had it done so, Avadel could have sought "the same genre" of relief it seeks here: setting aside the allegedly flawed Patent Decision. *El Rio*, 396 F.3d at 1271.

Avadel also demands "clear and convincing evidence" of legislative intent to bar APA review. Opp. 15. That demand is met by section 505(h) itself, and by the delisting counterclaim too. "[W]here Congress has provided an independent cause of action or an alternative review procedure," the D.C. Circuit has "found clear markers of legislative intent to preclude" APA review. *CREW v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (internal quotation marks omitted).

Avadel next argues that the delisting counterclaim that it pursues in Delaware is not a "real alternative" because this case and the Delaware case "involve different questions." Opp. 15 (quotation marks omitted). But that is not the test. The question is "whether the *relief potentially available*" from the delisting counterclaim is "'of the same genre' as that available under the APA." *El Rio*, 396 F.3d at 1272 (citation omitted; emphasis added). It clearly is. Here, Avadel "seeks to be relieved of the compelled obligation imposed by the Patent Decision to certify." Opp. 31 (emphasis omitted). In Delaware, Avadel seeks to have the '963 patent delisted—which would nix the need to certify. *See* Opp. 15. Thus, there is no real question that Avadel currently pursues the same genre of relief from two different courts.

## IV.     AVADEL WAIVED ITS CENTRAL CLAIMS.

Relying on "the well-settled premise that objections to agency proceedings must be presented to the agency 'in order to raise issues reviewable by the courts,'" *Salt Lake Cmty. Action Program, Inc. v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993), Jazz showed that Avadel waived its claim that FDA lacked authority to review and reject Avadel's patent statement by failing to present that claim to the agency. Jazz Br. 18-19. ███████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ ; *see also Del. Dep't of Nat. Res. & Env't Control v. EPA*, 895 F.3d 90, 96 (D.C. Cir. 2018) (a party's "obvious about-face render[s] its claims forfeited"). Avadel does not challenge these showings. That should be a wrap.

Instead, Avadel boldly argues that the rule that "a plaintiff must have raised an issue to an agency … does not apply here," because the NDA process is "not sufficiently adversarial to apply an exhaustion requirement," and pursuant to "the doctrine of futility." Opp. 16–17. These are classic arguments of last resort. They lack all merit here.

Avadel first tries to hide behind *Carr v. Saul*, where the Supreme Court held that issue waiver did not apply to Social Security disability claimants who sought to present structural constitutional arguments. 141 S. Ct. 1352, 1362 (2021). Even apart from the glaring differences between the position of a disability benefits claimant raising constitutional claims rather than "routine" statutory arguments, *see id.* n.5, and that of a public company seeking permission to market a controlled substance, two key factors distinguish *Carr*. First, *Carr* made clear that the threshold question is whether Congress has required issue exhaustion. Avadel says there is no such statute, Opp. 16, which again ignores section 505(h): "No objection to the order of the Secretary shall be considered by the court *unless such objection shall have been urged before the Secretary or unless there were reasonable grounds for failure so to do.*" 21 U.S.C. § 355(h) (emphasis added).

That is almost word-for-word the language used by Congress in other statutes that the Supreme Court has identified as creating express issue-exhaustion obligations. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 108 (2000).

Second, Avadel ignores *Carr*'s prime directive: "The critical feature that distinguishes adversarial proceedings," where issue exhaustion is required, "from inquisitorial ones," where issue exhaustion is not judicially imposed, "is whether claimants bear the responsibility to develop issues for adjudicators' consideration." 141 S. Ct. at 1358. Issue exhaustion thus clearly applies to the NDA review process, where "the burden of proof" lies squarely on "the manufacturer." *Wyeth v. Levine*, 555 U.S. 555, 567 (2009); *see* 21 U.S.C. § 355(d)(1)-(5); 21 C.F.R. § 12.87(d).

Avadel's futility argument is, well, futile. Avadel *concedes* FDA had the power to *consider* Avadel's arguments and argues only that FDA would have had to publish a notice in the Federal Register to inform the public of its change of position. Opp. 18. Avadel's prediction that FDA would have *rejected* those arguments may explain why Avadel declined to raise them, *id.*, but that is not futility. That just describes run-of-the-mill waiver.

Finally, Avadel has no basis to complain that it lacked "adequate notice" that its statement might be deemed inappropriate because FDA never requested "any briefing or argument or other formal response on this issue." Opp. 17. In reality, ███████████████████████████ ███████████████████████████████████████. "You have no business asking" would have been a natural response if Avadel believed its patent statement was unreviewable by FDA, but Avadel did not make that argument. Instead, it repeatedly tried to persuade FDA ████████████████████████ that its statement was appropriate—a stance that not only waived the no-power argument, but also implied that FDA *did* have authority to scrutinize the patent statement. Again, this is classic waiver.

## V.     AVADEL'S ARGUMENTS ON THE MERITS FALL SHORT.

### A.     FDA Has Authority To Reject Avadel's Section 505(b)(2) Statement.

1.     Avadel asserts that there is no "authority that would even allow FDA to reject" a section 505(b)(2)(B) statement, Opp. 22, but FDA is required to reject an application that contains "any untrue statement of a material fact." 21 U.S.C. § 355(e)(5); 21 C.F.R. § 314.125(b)(7). Avadel tries to escape those provisions by recasting its statement as a "legal question" but musters no authority for that view. Opp. 23-24. The absence of authority is understandable given that the statute asks whether Avadel "is seeking approval" for a patented use. 21 U.S.C. § 355(b)(2)(B). Whether an applicant seeks approval for a protected use is a question of fact, which FDA is uniquely situated to assess, and which is distinct from construction of the patent. *Cf. Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) ("determining whether infringement occurred" is "'a question of fact'"). Indeed, Avadel admits the question is primarily factual by repeatedly arguing that an irresponsible section 505(b)(2) patent statement could theoretically carry criminal liability under 18 U.S.C. § 1001. *See* Avadel Br. 22 (Dkt. 2-1); Opp. 14 n.8 and 25. That statute, of course, prohibits materially false statements of fact.

2.     Avadel next says that even if FDA has "power to reject a statement," the agency lacks "power to compel a patent certification." Opp. 22. This fails for at least three reasons. First, FDA did not "compel" Avadel to submit a certification. ████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

Second, FDA's approvability decision reflects the black-letter requirement that section 505(b)(2) applicants address *every patent* covering the listed drug. Thus, all such applications "shall" include the certifications required by 21 U.S.C. § 355(b)(2)(A) "and" any statement

required by 21 U.S.C. § 355(b)(2). Subparagraphs (A) and (B) then cover the waterfront. The former requires a certification for "each" drug substance/product patent and "each" patent describing a use for which approval is sought, while the latter requires a statement for any patent describing a use for which approval is not sought. FDA's regulations likewise leave no gap: if proposed labeling discloses a "condition of use" claimed by a patent (determined "according to" the use code), then "the applicant must submit" a certification. 21 C.F.R. § 314.50(i)(1)(iii)(B). The courts also have acknowledged that a certification or statement is required "for each patent listed in the *Orange Book*." *AstraZeneca LP v. Apotex, Inc.*, 633 F. 3d 1042, 1046 (Fed. Cir. 2010). FDA therefore is correct that this aspect of the statute is self-executing and that policing an applicant's choice of patent submission is within the agency's authority. FDA Br. 13 (Dkt. 28); *see* 68 Fed. Reg. 36676, 36683 (June 18, 2003) (FDA must "determine what submission is required of the ANDA and 505(b)(2) applicants referencing the approved drug").[5]

Third, FDA is prohibited from approving any application that "failed to contain the patent information prescribed by subsection (b)." 21 U.S.C. § 355(d)(6). Avadel claims that FDA has disclaimed this reading of the statute. Opp. 14, 23. The cited cases, however, discuss only FDA's longstanding policy of not policing an innovator's submissions to the *Orange Book*. *See aaiPharma Inc. v. Thompson*, 296 F.3d 227, 239–40 (4th Cir. 2002); *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1348–49 (Fed. Cir. 2003). The cited cases say nothing about how FDA will handle patent certifications and statements, and Avadel forgets that, when FDA indicated in the wake of

---

[5] In yet another desperation play, Avadel claims that so long as it addressed **one** patent covering Xyrem, it was free to ignore the remainder. Opp. 22. In support, Avadel cites only *Genus Lifesciences, Inc. v. Azar*, No. 20-211, 2021 WL 270409 (D.D.C. Jan. 27, 2021). That case, however, involved a section 505(b)(2) application that did not identify any listed drug. *Id.* at *3. The *Genus* court broke new ground by determining that, even without a listed drug, the application should have included a certification that there were no relevant patents. *Id.* Nothing in that opinion supports Avadel's position that an applicant is free to ignore a listed patent.

the Hatch-Waxman amendments that a failure to submit a patent certification would result in a denial, it used the terms of section 505(d)(6). Griffin Ex. 37 at 4 (*October 1984 guidance*) ("If this **patent information** is not included in the application, [it] will be considered incomplete and will be the subject of a not approvable letter.") (emphasis added).

**3.**     The Opinion Clause does not alter any of the above. Avadel claims that the Opinion Clause grants Avadel absolute control over its statutory obligation to certify to patents in the Orange Book. As Jazz previously showed, that reading is inconsistent with section 505(d)(6) and section 505(e)(5), is inconsistent with the applicant's burden of proof, is contrary to the rules of statutory construction and English grammar, would do violence to the structure of the statute by opening an unintended loophole in section 505(b)(2)(A) and (B), and would destroy the careful balance of the Hatch-Waxman amendments. Jazz Br. 19-26.

Avadel's attempted rebuttals all fail. First, Jazz's reading does not render the clause "surplusage." Opp. 22. The Opinion Clause retains meaning by establishing the basis on which a certification is made and protecting the speaker against the risk of error. Jazz Br. 22-23. Indeed, that is the normal understanding of such clauses. Jazz Br. 24 n.5. Second, Avadel contends that the Opinion Clause, in subparagraph (A), should be "read to extend to the patent *statement* provision in 21 U.S.C. § 355(b)(2)(B)." Opp. 22. But that violates the cardinal rule that courts must "give effect to, not nullify, Congress' choice to include limiting language in some provisions but not others." *Gallardo ex rel. Vassallo v. Marstiller*, 142 S. Ct. 1751, 1759 (2022). Avadel never addresses that rule of construction. Third, turning to grammar, Avadel wrongly attributes to Jazz the view that the Opinion Clause modifies only clauses (i) to (iv). Opp. 19-20. This "'skip 48 words' theory," Opp. 20, is a strawman. Jazz argued that, pursuant to the last antecedent canon, the Opinion Clause is an adjectival clause that modifies only the immediately preceding noun,

"certification." Jazz Br. 20 (citing *Sierra Club v. Wheeler*, 956 F.3d 612, 617 (D.C. Cir. 2020)). As such, the Opinion Clause does not and cannot modify the statute's *subsequent* description of the scope of the obligation imposed, which is to include a certification "with respect to each" relevant patent. *See* Jazz Br. 24; *Nielsen v. Preap*, 139 S. Ct. 954, 964 (2019) (adjectival clauses can only modify a noun, not a verb). Avadel never addresses Jazz's actual argument.[6]

### B. FDA Properly Rejected Avadel's Statement.

1.      Many of Avadel's arguments are not properly before the Court. Jazz Br. 31-32. Because a patent certification impacts a section 505(b)(2) application only if the sponsor of the listed drug brings a timely patent infringement suit, *see* 21 U.S.C. § 355(c)(3)(C), Congress appropriately specified such a suit as the exclusive forum for objections to the obligation to certify to a patent. Thus, applicants like Avadel may file a counterclaim to compel the patent owner to "correct or delete" a use code that "does not claim … an approved method of using the drug." 21 U.S.C. § 355(c)(3)(D)(ii)(I)(bb). That counterclaim perfectly encapsulates Avadel's arguments that U-1110 "does not describe a use for any drug," Opp. 25-30, "does not describe a use for sodium oxybate," Opp. 30-31, and does not describe an approved use, *see* Opp. 33-35. There is no dispute that Avadel pursues such a counterclaim, and Avadel cannot deny that such counterclaims

---

[6] The closest Avadel comes is to invoke the series-qualifier canon. Opp. 20. But, as Avadel's cases show, that canon cannot apply without an actual series. *Compare United States v. Laraneta*, 700 F.3d 983, 989 (7th Cir. 2012) (noting, without deciding, that the canon might apply to the six types of "losses" specified in 18 U.S.C. § 2259(c)(2)(A)-(F)), *with City of Salisbury v. FERC*, 36 F.4th 1164, 1169 (D.C. Cir. 2022) (canon requires a list of nouns appearing "in a 'straightforward, parallel construction' as in … 'the laws, the treaties, and the constitution of the United States'") (citations omitted). Indeed, both of the D.C. Circuit decisions cited by Avadel refused to apply the canon for that reason. *City of Salisbury*, 36 F.4th at 1169 (the phrase "consistent with the City of Salisbury's design" modified only the immediately prior noun "access"); *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. IRS*, 926 F.3d 819, 824 (D.C. Cir. 2019) (adjectival phrase "attributable to such office or other fixed place of business" modified the noun "sale" rather than "income" in the phrase "income from any sale" in 26 U.S.C. § 865(e)(2)(A)).

are exclusive, *see* 21 U.S.C. § 355(c)(3)(D)(ii)(II), or that it must maintain a patent certification until the counterclaim is resolved, *see* 21 C.F.R. § 314.53(f)(1)(ii).

Avadel ignores both of those provisions and asserts instead that the D.C. Circuit "expressly rejected Jazz's argument," and established a "division of labor between this Court and the patent court." Opp. 32 (citing *Purepac II*). That is impossible. The *Purepac* ligation did not involve the statutory counterclaim, which did not even exist when the suit began or was in the district court. Congress created it just prior to the issuance of the *Purepac II* decision.[7]

Avadel's attempt to distinguish between challenging the use code and challenging the patent also fails. Opp. 32-33. The law is clear that the counterclaim can be used to argue that a use code should not "compel a patent certification." Opp. 33. *See, e.g.*, *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 418 (2012) ("use codes fall within the counterclaim's ambit"); *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 688 F.3d 766, 768 (Fed. Cir. 2012) (in an infringement action, "it is appropriate for district courts to … provide clear limits on the appropriate scope of the corresponding use code"). Indeed, the relief that Avadel seeks in Delaware ("delisting of the '963 patent") would obviously accomplish what it seeks here ("to be relieved of" the obligation to certify). Opp. 31.

---

[7] The events in the *Purepac / TorPharm* saga occurred between 1997 and 2002. The district court's decisions were entered in December 2002 and April 2003. The D.C. Circuit appeal was argued in November 2003, and the opinion issued in January 2004. In contrast, 21 U.S.C. § 355(c)(3)(D)(ii) was not enacted until the Medicare Prescription Drug, Improvement, and Modernization Act was signed on December 8, 2003. Pub. L. No. 108-173, tit. XI, subtit. A, § 1101(b)(2)(C), 117 Stat. 2066, 2456. That saga also is easily distinguished. It involved a dispute between two ANDA filers about who should receive 180-day exclusivity. When the courts faulted FDA for failing to review the "entire record," they were discussing FDA's refusal to consider that the sponsor of the listed **denied** that its use code covered the relevant indication. The district court rightly understood that this presented "unique factual circumstances." *Purepac I*, 238 F. Supp. 2d at 205.

**2.** ████████████████████████████████

█████████████████████████████████████ This description has

not previously been controversial; every prior applicant for sodium oxybate has duly certified to

the '963 patent based on U-1110. *See* Jazz Br. 25; FDA Br. 23. But Avadel seeks special privilege

and claims it should not have to certify because the only uses that matter are those that pertain to

"how [a] drug is administered to a patient," Opp. 26-27, and ██████████████████

████████████████████ Avadel is wrong on both points.

*First*, Avadel errs in trying to narrowly define the phrase "a use for" in 21 U.S.C.

§ 355(b)(2)(A)–(B). Avadel cites no case supporting its cramped interpretation, and courts

generally give the term "use" a broad interpretation. *See, e.g.*, *Nat'l Auto. Dealers Ass'n v. FTC*,

864 F. Supp. 2d 65, 74-75 (D.D.C. 2012) ("use" is "the broadest of the terms" found in the Fair

Credit Reporting Act). One ordinary meaning is to "take, hold, or deploy (something) as a means

of accomplishing a purpose or achieving a result." *Id.* at 74. Indeed, even Avadel is forced to

concede that "use" includes putting something "into service." Opp. 26. ██████████████

██████████████████████████████████████████████

████████████████████████ there is no reason to categorically exclude

the concept of "distribution" from the statutory phrase "a use for."

Avadel also errs in contending that a restricted distribution program cannot constitute an

"approved use" or "conditions of use" under 21 C.F.R. § 314.50(i)(1)(i) and (iii). Opp. 26. FDA

first asserted authority to impose distribution restrictions in 1992 when it promulgated 21 C.F.R.

§ 314.520(a)(1), and it used that authority to require the restrictions currently in place for Xyrem.

The preamble for that regulation plainly states that distribution restrictions required by FDA are

approved conditions of use. *See* 57 Fed. Reg. 58942, 58951 (Dec. 11, 1992) (distribution

restrictions imposed under 21 C.F.R. § 314.520 "are precisely those deemed necessary to ensure that section 505 criteria have been met, *i.e.*, restrictions to ensure that the drug will be safe under its approved conditions of use").

Avadel wrongly claims that Congress changed that understanding through section 505-1. Opp. 35-37. Congress added that provision in 2007 to resolve lingering concerns about FDA's authority to require distribution restrictions as a condition of approval. *Cf.* 57 Fed. Reg. at 58951 (discussing *APhA v. Mathews*, 530 F.2d 1054 (D.C. Cir 1976)). The new statute immediately became an inextricable part of FDA's review and approval of NDAs under subsection 505. First, section 505-1 applies to "covered applications," a term defined, through a cross-reference to section 505, as an application "approved under subsection (b)." 21 U.S.C. § 355-1(b)(2) (referring to 21 U.S.C. § 355(p)(1)(A)). Second, a REMS can be required only "to ensure that the benefits of the drug outweigh [its] risks," 21 U.S.C. § 355-1(a)(1), which is a direct reference to the NDA approval standard. Third, elements to assure safe use ("ETASU"), including distribution restrictions, are reserved for situations where the drug "can be approved only if" such measures are imposed. 21 U.S.C. § 355-1(f)(1)(A). Fourth, the authority to require a REMS can be exercised only by "individuals empowered to approve a drug." *id.* § 355-1(a)(4). Fifth, when required, a REMS must be submitted as part of an NDA. *See id.* § 355-1(a)(1). Finally, once the application has been approved by FDA, the requirements of the REMS requirements are enforced through section 505(p). *See id.* § 355(p)(1).

Given these statutory links, the fact that Avadel submitted its proposed REMS as a module of the new drug application for FT218, and the fact that the proposed REMS will only be approved (if ever) as part of that application, means that Avadel seeks approval for its proposed REMS "under this subsection" within the meaning of 21 U.S.C. § 355(b)(2)(A)–(B). Avadel tries to

obscure that truth by pointing to section 505-1(h), Opp. 33-34, but it relies primarily on a dispute resolution process that applies only when FDA seeks to impose a REMS on an already approved drug or to modify an existing REMS. *See* 21 U.S.C. § 355-1(h)(4)(A)(i) (disputes arising "after the sponsor is required to make a submission under subsection (a)(2) or (g)").[8] In marked contrast, a dispute about a REMS submitted "in an application for initial approval of a drug" must be addressed under section 505. *See id.* § 355-1(h)(3) (the sponsor "shall use" dispute resolution procedures established by the Prescription Drug User Fee Act).[9]

**Second**, Avadel remains wrong even under its cramped definition of "use." Avadel contends that the only purpose of the computer database is to prevent "diversion" and to keep sodium oxybate away from "non-patients." Opp. 1, 29. ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

---

[8] The dispute resolution procedures rattled off by Avadel pertain **only** in that context. *Compare* Opp. 33-34, *with* 21 U.S.C. § 355-1(h)(4)(B)–(K). Subsection 505-1(h) also includes specific procedures for evaluating the risks posed by a class of drugs, *see id.* § 355-1(h)(5)–(6), and international coordination, *id.* § 355-1(h)(7), but Avadel does not rely on them.

[9] Avadel also offers the outlandish take that a drug's approved conditions of use include only its "dosing regime [sic]." Opp. 26 (quoting 81 Fed. Reg. 69580, 69607 (Oct. 16, 2016)). Avadel misquotes the preamble, which describes amendments to 21 C.F.R. §§ 314.50 and 314.94 to recognize that method-of-use patents can cover "a condition of use **other than** an indication (**e.g.**, a dosing regimen)." 81 Fed. Reg. at 69607 (emphases added). A "dosing regimen" was thus given as an example of a condition of use, not a limiting definition.



. Thus, using a computer database is part of the safe and effective treatment of **patients** with sodium oxybate and therefore a "use" under Avadel's interpretations.

Thus, both the REMS for Xyrem use a computer database as part of the safe administration of sodium oxybate to patients. That is precisely why Jazz's use code reads "*method of treating a patient* with a prescription drug using *a computer database*." Contrary to Avadel's baseless accusation, Opp. 38, that language is not misleading and there would have been no basis for FDA to treat it as though it did not exist.

Finally, Avadel alleges that Jazz violated section 505-1(f)(8). Opp. 6-7, 29-30. As FDA explained, the allegation lacks merit. *See* FDA Br. 18–19 (section 505-1(f)(8) does not apply to the listing of a REMS patent in the *Orange Book*). In any event, REMS patents are not quite as rare as Avadel thinks.[10] To the extent that REMS patents are less common today than other types,

---

[10] Avadel claims that the only other REMS patents in the *Orange Book* pertain to Fintepla (fenfluramine). Opp. 6. Avadel ignores at least the REMS patents that were listed for Thalomid (thalidomide) under U-371 and U-1109, for Revlimid (lenalidomide) under U-1210, for Pomalyst (pomalidomide) under U-1361, and for Entereg (alvimopan) under U-1443 and U-1485.

that is because only a few drugs warrant a REMS, even fewer warrant a REMS with a distribution restriction program, only a handful of those (including Jazz's program) have included patentable inventions, and many of the patents have expired.

3.    Avadel next asserts that use codes must identify a specific drug, Opp. 30-31,[11] but a glance at the *Orange Book* is enough to prove them wrong. Seemingly hundreds of use codes in the current *Orange Book* describe methods of use without identifying a particular drug, including:

| Code | Descriptor |
|------|-----------|
| U-1 | Prevention of pregnancy |
| U-2 | Treatment or prophylaxis of angina pectoris and arrhythmia |
| U-100 | Method of treating ocular inflammation |
| U-1000 | Adjunctive therapy to diet in patients with hyperlipidemias |
| U-3000 | Method for post-exposure prophylaxis of influenza |

All such codes would all be called into question under Avadel's approach.

Nor should the Court be swayed by Avadel's fear that such codes will be construed to cover every drug. *See* Opp. 31 ("*every prescription drug* that seeks FDA approval and uses a distribution database would need to certify"). Use codes do not exist in a vacuum. Each code is identified in the *Orange Book* only for specific patents and specific drugs. Thus, U-1110 is listed only for the '963 patent family, which is listed only for Xyrem and Xywav. The obligation to certify to that patent arises only when an applicant has chosen to identify Xyrem or Xywav as the listed drug. *See* 21 U.S.C. § 355(b)(2)(A); 21 C.F.R. §§ 314.50(i)(1)(iii)(B), 314.54(a)(1)(vi). When that obligation arises, it cannot be evaded by a false section 505(b)(2)(B) statement.

---

[11] Jazz previously explained why this is wrong, not least because the cases cited by Avadel interpret patents, not use codes, and the '963 patent specifically identifies sodium oxybate. Jazz Br. 30-31. It is ironic that Avadel contends that the Court must consider the "entire record," Opp. 27, 32, but urges the Court, Opp. 31 n.18, to ignore the fact that the '963 patent refers to sodium oxybate, even though that distinguishes both *UFCW Local 1776 v. Takeda Pharm. Co.*, 11 F.4th 118 (2d Cir. 2021), and *In re Lantus Direct Purchaser Antitrust Litigation*, 950 F.3d 1 (1st Cir. 2020).

**4.**      FDA's review of Avadel's REMS did not violate any regulation. All agree FDA was required to review at least the proposed "labeling" for FT218 to determine whether Avadel seeks approval for the patented use. Opp. 35 (citing 21 C.F.R. § 314.50(i)(1)(iii)(B)). As noted,

██████████████████████████████████████████████████████████████

████████████████████████████████████████ Avadel cannot switch sides now: "It is settled law that a party that presents a winning opinion before the agency cannot reverse its position before this court." *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 891 (D.C. Cir. 2006).

In any event, Avadel had it right the first time. As Jazz has explained, a document is part of a drug's "labeling" if it (1) has a textual relationship with the drug; (2) serves the function of labeling by explaining the drug's safe and effective use; and (3) is part of an integrated distribution program. Jazz Br. 34-36. Avadel's proposed REMS document easily meets those requirements:

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.[12]

████████████████████████████████████████████████████████████

████████████████████████████████████ Not true. A REMS document is an externally facing document that is addressed to patients and prescribers and designed to explain their obligations. ██████████████████████

████████████████████████████████████████████████████████████

---

[12] Avadel also suggests that its REMS document cannot be labeling because it will only be published to FDA's website. Opp. 37 (citing *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)). This is doubly wrong. ██████████████████████████████ ██████████████████████████ Second, the *Wilson* court recognized that the question is whether a website "serves the purpose of labeling, which is to supplement or explain the product." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1142 (N.D. Cal. 2013).



Avadel again contends that a drug's "labeling" is limited to just its "prescribing information." Opp. 37. This is highly misleading—prescribing information is just one kind of labeling. Jazz Br. 36-37 & n.11. Avadel plays similar games when it again asserts that REMS programs exist "beyond approved labeling," Opp. 36 (emphasis omitted), but such quotes are just unfortunate misstatements. *See* Jazz Br. 37. Avadel's new citation to *American College of Obstetricians & Gynecologists v. FDA*, 472 F. Supp. 3d 183 (D. Md. 2020), does not improve things. That case involved a challenge to FDA's decision not to waive REMS requirements for Mifeprex (mifepristone) during the COVID-19 pandemic, and it was an application of the due process standard that used to apply to abortion services. The court did not consider whether a REMS document is labeling, forcing Avadel to rely on obvious *dicta*.

Finally, Avadel also does not deny that any of the REMS materials other than the main REMS documents—the actual "letters, brochures, and other educational materials" to be used with prescribers, patients, and others—constitute labeling. Opp. 37. ████████████████

████████████████████████████████████

████████████████████████████████████

─────────────────────

████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. Both

facts suggest that the other REMS materials were considered by FDA. If they were not, then the

remedy is to remand so FDA may consider them.

**5.** ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████ Avadel offers no sound reason to

disturb that factual determination. *Cf.* 21 U.S.C. § 355(h) ("The finding of the Secretary as to the

facts, if supported by substantial evidence, shall be conclusive.").

As Jazz has explained, Jazz Br. 38-39, FDA's conclusion is consistent with the judicial

understanding that the indefinite article "a" usually encompasses "one or more" of a term. In patent

usage, akin to the use code context here, the "one or more" meaning almost always governs, except

in "extremely limited" circumstances where the patentee has "evinced a clear intent to limit 'a' or

'an' to 'one.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008)

(cleaned up). Avadel offered FDA no such evidence of Jazz's intent.[14]

Avadel disputes none of that. It argues only that the usual meaning cannot apply ████████

████████████████████████████████████████████████████████████████████

---

[14] Avadel again relies on *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) to argue that "a" must mean "one," but Avadel fails to explain how that can be true when the Eastern District of Texas later determined that a patent's reference to "a database" meant "one or more electronic databases." *Island Intell. Prop., LLC v. TD Ameritrade, Inc.*, No. 21-273, 2022 WL 1608044, at *8 (E.D. Tex. May 20, 2022). Avadel relegates that case to a footnote and grumbles that sometimes, a reference to "a" database can be singular depending on context. Opp. 39 n.23.



████████████████████████████████████████████████████████████

███████████████████ Moreover, Avadel ignores (and has now waived any chance to dispute)

FDA's alternative finding ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ Avadel thus loses even under its preferred construction.

Nor did FDA contradict itself. Avadel quotes portions of FDA's decision that ████████

██████████████████████████████████████████ But Avadel is quoting from the

portion of FDA's decision that evaluated which ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. When

FDA turned to the separate question of whether the use code covers "one or more databases," █

████████████████████████████████[15]

### C.   Count II Fails And Does Not Justify The Requested Remedy.

Avadel now concedes that Count II is merely a prayer for relief if Avadel succeeds on

Count I, Opp. 41, which means the Court need not separately address Count II. And if the Court

does reach Count II, it should enter judgment for Defendants as there has been no "agency action

unlawfully withheld." Jazz Br. 40-41. ██████████████████████████████████

████████████████████████. Consequently, there is no duty that FDA is presently

required to perform. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Avadel fails to justify the extreme relief of an order compelling action within 14 days. For

one thing, Avadel now concedes that the Court "need not reach" its request for a preliminary

---

[15] Avadel also argues that its REMS does not encroach on the use code for Jazz's REMS because the "two systems clearly work differently." Opp. 38. That claim is disputed by Jazz, amounts to an assertion of non-infringement (which requires a clause (iv) patent certification), and is actively being litigated in the patent case.

injunction, Opp. 42, which undercuts any foundation Avadel laid for an expedited remand. For another, the record does not support Avadel's characterization of FDA as dragging its feet. 

Avadel suggests that "FDA is holding in reserve an unresolved issue," Opp. 41,

In any event, Avadel appears to agree that, for FT218 to be approved, it must convince FDA that FT218 would be clinically superior to both Xyrem and Xywav. *See* Opp. 44 & n.27. Avadel may have presented its arguments on that score to the agency, but the question remains open and cuts strongly against imposing unrealistic deadlines on FDA. Finally, the Court should not credit

Indeed, just last month, and with its motion pending, Avadel disclosed that it has a "cash runway [that extends] to the middle of 2023," and that it has secured authority to issue and sell additional shares of stock to raise capital. Griffin Ex. 38 at 5 (Avadel Form 8-K); Griffin Ex. 39 at 4 (Avadel Form S-3).

Under all these circumstances, there is no basis for the extreme remedy Avadel has proposed.

## CONCLUSION

The Court should deny Avadel's motions for summary judgment and for a preliminary injunction, and should grant Jazz's motion for summary judgment.

Dated: September 14, 2022                 Respectfully submitted,

/s/ Kwaku A. Akowuah
Kwaku A. Akowuah (D.C. Bar No. 992575)

Sean C. Griffin (D.C. Bar No. 499537)
Christopher S. Ross (D.C. Bar No. 1643856)
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, DC 20005
T: (202) 736-8000
F: (202) 736-8711
kakowuah@sidley.com
sgriffin@sidley.com
christopher.ross@sidley.com

*Counsel for Defendant-Intervenor Jazz
Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2022, I electronically filed the foregoing Reply in Support of Defendant-Intervenor's Cross-Motion for Summary Judgment under seal with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system. Consistent with the terms of the Stipulated Protective Order entered in this case on August 4, 2022, all participants will be served with the Notice of Electronic Filing and the foregoing Reply in Support of Cross-Motion for Summary Judgment via email.


Date: September 14, 2022                                    /s/ Kwaku A. Akowuah
                                                           Kwaku A. Akowuah